Filed Dec. 20, 1894.

---

No. 16,708.

## GIFFEN ET AL. *v.* TAYLOR.

TRUST.—*Conveyance of Real Estate.*—*Aged Grandmother to Grandson.*— *Without Consideration.*—*Parol Agreement.*—*Statute of Frauds not a Cloak for Fraud.*—Where a woman seventy-eight years old, who could neither write nor read writing, and her husband being eighty-two years old, conveyed her real estate, her husband joining, to her grandson, at his suggestion, he being an active, energetic business man in whom she had great confidence, he proposing to take care of it, see to the liens and taxes, and sell it for her and account to her for the proceeds, and would charge her for just what his services were worth, and at any time she should want the property back he would convey to her all that remained unsold, no trust being expressed in the deed,—the grandson holds the land in trust for his grandmother, and the statute of frauds will not serve as a cloak for his own fraud when he repudiates the trust and claims title in his own right. In such case, the conveyance will be set aside, except as to such land as the trustee has sold.

From the Marshall Circuit Court.

*F. E. Osborn* and *W. B. Biddle,* for appellants.
*J. D. McLaren,* for appellee.

HOWARD, C. J.—This was an action brought by appellee against appellants, to set aside a deed and to quiet title to real estate, and for damages.

There was a finding of facts by the court, followed by conclusions of law and a judgment in favor of appellee.

The first and second assignments of error, calling in question the sufficiency of the complaint, are presented, as counsel say in their brief, "only out of caution, believing the whole merit of the case can be better raised on the third assignment of error"; and they remark further: "We regard the merits of the case as more readily presentable under the third error assigned,—that the court erred in its conclusions of law upon the special findings."

We agree with the view here taken by counsel, and will only say of the complaint that we find it sufficient.

The facts found specially by the court are, substantially, as follows:

That on the 25th day of April, 1890, the appellee was the owner in fee-simple of the lands described in the complaint, and which are sought to be recovered; that she was a married woman of the age of seventy-eight years, and her husband, John Taylor, was then of the age of eighty-two years, both in moderately good health and of sound mind for persons of their age. The appellee could not write or read writing; but her husband was well-informed in regard to ordinary business transactions, could read and write, and could understand deeds and other instruments relating to the transfer of real estate; that the appellant, Abner Giffen, is the grandson of the appellee and her said husband, and was then twenty-nine years old, the remaining appellant, Ellen,

being his wife. Before and at said date the appellee had a great affection for Abner, which was reciprocated by him. He had never had any business relations with her, and had never advised her in relation to her property.

In April, 1890, appellee resided with her husband in Bourbon, Marshall county, while the appellant, Abner, was then, and still is, engaged in selling musical instruments and doing a general trading business in that line, traveling over LaPorte, Starke and Marshall counties; and was, and still is, an active, energetic business man; and the appellee had implicit confidence in his honesty and integrity, which was known to Abner, and his demeanor towards her had been of such a character as to justify her in that confidence. She believed him to be of good business tact and capacity. They had met only occasionally for a period of eight years, and for the two years prior to April, 1890, they had not met or communicated with each other.

In April, 1890, the sheriff of Starke county had and held in his hands certain fee bills which he had levied on appellee's said lands, and advertised the same for sale.

On April 25, 1890, appellee went to the house of her son, one Samuel Taylor, in Hamlet, Starke county, in and near which town said lands are situate, to learn the amount and nature of the claims against her land; and while she was at the house of her said son, the appellant Abner met her there, and, after learning of her trouble about her property, proposed to her that if she would deed the property to him, he would take care of it, see to the liens and taxes and sell it for her and account to her for all the proceeds, charging her for just what his services were worth, and at any time she should want the prop-

erty back he would convey to her all that remained un-
sold.

On her agreeing to this proposition they went together to
Knox, the county seat, and there learned that the only
liens against the land were said fee bills, amounting to
about $140. He afterwards informed appellee that he
had paid off the fee bills, whereupon she and her hus-
band paid him the amount he had thus expended, and
took his receipt. Abner then prepared a deed to him-
self for all the lands, the nominal consideration being
two thousand dollars, but there being no consideration
actually paid, which deed appellee and her husband duly
executed, all in accordance with the agreement to sell,
account for proceeds, and reconvey to her any land un-
sold whenever she should desire, as hereinbefore set out.
No trust was expressed in the deed.

This deed conveyed to said appellant all the property
then owned by appellee. Appellee then had, and still
has, numerous children and grandchildren. She, with
her husband, had, before this time, made a gift of con-
siderable value to said appellant's mother. Some of ap-
pellee's descendants were then, and still are, poor people.
Appellee did not intend to make a gift of the land con-
veyed by this deed, but relied on the promise and agree-
ment of said appellant as aforesaid. Said appellant did
not, during the pendency of the transaction, make any
untruthful or fraudulent representations concerning the
property or concerning liens thereon; and up to the time
the deed was executed he did not intend to hold the prop-
erty conveyed to him otherwise than in trust for the ap-
pellee, but after the deed was executed and recorded he
conceived the idea of holding it as his own.

Before the commencement of this action said appel-
lant had sold three and one-half of said lots for three
hundred and fifty dollars; all of which money he con-

verted to his own use, which sum appellee demanded of him, less his reasonable compensation for making such sales, and she also demanded that he reconvey to her the land unsold, all of which he refused to do; that said lands have not been otherwise sold or encumbered by appellants. A reasonable compensation for said appellant's services is one hundred dollars.

As conclusions of law the court found:

That the deed to appellant, Abner, made by appellee and her husband, ought to be set aside, except as to the lots sold by him; that the remainder of said lands belongs to appellee in fee-simple, and her title thereto should be quieted and the appellants restrained from setting up any title thereto; that a commissioner should be appointed to reconvey said land, and that she should recover of said appellant two hundred and fifty dollars, with interest, and her costs.

Counsel for appellant contend that the facts found do not warrant the conclusions of law; that the facts show only a failure on the part of the appellant to keep his promise; that he was without fault up to the time of receiving the deed; that the idea of claiming the property as his own was conceived only afterwards.

Counsel make no claim that the land rightfully belongs to appellant, but only that he did no wrong up to the time of procuring the deed; in other words, that the wrongful taking of the property and the appropriation of the proceeds to his own use, occurred only after the deed was made, and hence "this breach of contract is not fraud, and would not take the case out of the statute."

It is a salutary maxim that the statute against frauds can not be used as a cover for fraud. The fraud in this case is clear, shameless, and barefaced. A young business man, a favorite grandson, under pretense of aiding

the old people in caring for their property, proceeds deliberately to appropriate to his own use the whole estate of his aged grandparents; and when called upon to account for the transaction, he coolly informs the court that the statutes enacted to protect innocent holders of real estate from the results of fraud in transfers of title have become for him a shield, under cover of which he proposes to keep his ill-gotten gains. It would be a reproach to the law if such a claim could be allowed.

In *Myers* v. *Jackson,* 135 Ind. 136, an aged man and wife, as in this case, were induced by a friend to convey their land to him, without consideration, on condition, amongst other things, that he should reconvey to the wife an undivided one-third of the land. There was there, as in the case at bar, no fraud or misrepresentation up to the time of the procuring of the deed; but afterwards, as in this case, the grantee refused to reconvey, and claimed immunity for his wrongdoing under the statute of frauds. This court, however, held, in that case, that the facts showed a resulting trust in favor of the aged wife.

In *Cox* v. *Arnsmann,* 76 Ind. 210, a father and mother conveyed their land to their son, without consideration, and on condition that he should reconvey to his mother. The court said in that case: "It was always held that the statute of frauds would not be permitted to accomplish a fraud. Our statute of trusts above referred to (section 3391, R. S. 1894; section 2969, R. S. 1881) is, in its first section, substantially a reënactment of the seventh section of the statute of frauds. 29 Charles II Ch. 23. It therefore will not be permitted to accomplish a fraud. If, by virtue of this section, John Arnsmann were permitted to hold the property as his own, his father and mother would lose their property by fraud. To prevent that result, equity raises a constructive trust

in John Arnsmann, for the benefit of his mother, pursu-ant to the agreement by which he obtained the deed for the property, and permits that trust to be proved by parol."

See, also, *Tinkler* v. *Swaynie*, 71 Ind. 562; *Catalani* v. *Catalani*, 124 Ind. 54; Perry Trusts, sections 226, 227.

There is here no question of the rights of third parties. All persons having any concern in the property, or un-der the deed or the contract, were before the court to have equity done them; and that equity has been fairly meted out to them by the conclusions of law and the judgment of the court. There can be no doubt that a just and equitable conclusion has been reached.

The judgment is affirmed.

Filed May 16, 1894; petition for a rehearing overruled Dec. 13, 1894.